UNITED STATES DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| Charlene LeMoine,<br>　　　　　　　　　　　　　　Plaintiff<br>vs.<br><br>Empire Blue Cross Blue Shield, Cushman & Wakefield, Inc. PPO Incentive Plan, Blue Cross Blue Shield of Illinois, ABC Corp. 1-10,<br>　　　　　　　　　　　　　　Defendants. | Civil Action No.:  2:16-cv-6786 JMV JBC<br><br>**Amended Complaint** |

　　　　This is an action to demand benefits from Plaintiff's health insurance plan and providers pursuant to §502(a)(1)(B) of the Employment Retirement Income Security Act ["ERISA"].

**Parties**

　　1.  At all relevant times, Plaintiff Charlotte LeMoine has been a citizen and resident of the State of New Jersey residing at 349 Goffle Road, Ridgewood, Bergen County, New Jersey.

　　2.  At all relevant times, Defendant Empire Blue Cross Blue Shield has been a health insurance provider with its principal place of business located in Middletown, New York.

　　3.  At all relevant times, Defendant Cushman & Wakefield, Inc. PPO Incentive Plan has been a policy of health insurance offered by Cushman & Wakefield, Inc. to its employees as a benefit of employment and is administered through Cushman & Wakefield, Inc. offices located in New York, New York.

　　4.  The Defendant Cushman & Wakefield, Inc. PPO Incentive Plan is a health insurance policy created and administered pursuant to the Employee Retirement Income Security Act [ERISA].

1

5. At all relevant times, Defendant Blue Cross Blue Shield of Illinois has been a health insurance provider with its principal place of business located at 3200 Robbins Road, Springfield, Illinois 62704.

6. The Defendant ABC Corp. 1-10 is a fictitiously named defendant[s] that on information and belief may have been a third party administrator or other entity that engaged in the review and benefits determinations of Plaintiff's medical bills. Plaintiff does not at this time have sufficient information to identify this entity by name or location.

## Jurisdiction

7. This Court has jurisdiction over this case pursuant to 28 U.S.C. §1332 because the Plaintiff and all Defendants are citizens or domiciliaries of different states.

8. This Court has jurisdiction over this case pursuant to 29 U.S.C. §1132 [ERISA §502(f)] because Plaintiff's claims are based on §502(a)(1)(B) of the Employment Retirement Income Security Act ["ERISA"], actions for which this Court has original jurisdiction.

## Venue

9. Venue in This Court is proper pursuant to U.S.C. §1132(e)(2) [ERISA §502(e)(2) because the Defendant's breach of contract and denial of insurance benefits to Plaintiff took place in New Jersey.

**Count One:  Breach of Contract and Denial of Contract Benefits by Empire Blue Cross Blue Shield and Blue Cross Blue Shield of Illinois**

10. On January 3, 2014, Plaintiff began working for the Sitex Realty Group, LLC as a property manager for large residential apartment complexes.

11. As a benefit of her employment with Sitex, Ms. LeMoine received health insurance coverage from the Blue Cross Blue Shield of Illinois Company ["BCBS-IL"] through an employee group health plan #P58963 with ID # xxxxxxxx9908.

12. On February 15, 2014, Ms. LeMoine ended her employment with Sitex Realty, LLC.

13. On March 1, 2014, Ms. LeMoine began her health insurance coverage through BCBS-IL.

14. On March 21, 2014, Ms. LeMoine began working for Cushman & Wakefield, Inc. as a property manager.

15. As a benefit of her employment with Cushman & Wakefield, Ms. LeMoine received health insurance coverage from the Empire Blue Cross Blue Shield company ["Empire"] through an employee group health plan #295926500 with ID # xxxxxxx0089.

16. On April 1, 2015, Ms. LeMoine began her health insurance coverage through Empire.

17. On April 19, 2015, Ms. LeMoine suffered life threatening injuries as a result of a motor vehicle incident in Ringwood, New Jersey.

18. Ms. LeMoine was a passenger on a motorcycle that had been struck by a car that crossed the double yellow line in the street.

19. A helicopter medevacked Ms. LeMoine from the crash site to the Hackensack University Medical Center Trauma Unit in Hackensack, New Jersey.

20. At the hospital, Ms. LeMoine underwent a series of surgeries by a number of trauma specialists and surgeons during her almost month-long stay.

21. Under New Jersey law, a motorcycle passenger has no access to so-called PIP insurance coverage either from the motorcycle operator or from her own automobile insurance.

22. Due to her perilous medical circumstances, Ms. LeMoine did not choose or approve in advance those many healthcare providers that saved her life.

23. At the time of her arrival in the Hackensack University Medical Center, either hospital staff or a family member obtained Ms. LeMoine's health insurance identification card from BCBS-IL and presented it to the hospital as proof of coverage.

24. Most, if not all of the independent healthcare providers that billed Ms. LeMoine for their services also copied the BCBS-IL policy information.

25. As of April 19, 2015 and at least until June 13, 2015, Ms. LeMoine had valid, effective health insurance under both the BCBS-IL insurance plan and the Empire plan, coverage on which she reasonably relied.

26. On an unknown date and believing there had been an error in identifying the proper health insurance carrier, either Ms. LeMoine one of Ms. LeMoine's family members provided the hospital and care providers with the plan information for Empire.

27. Following discharge from the hospital on May 13, 2015, Ms. LeMoine continued inpatient care at the Kessler Rehabilitation Center until May 22, 2015 and continued intensive outpatient therapy for her injuries until February 22, 2016.

28. During the period of her active medical care, Ms. LeMoine's healthcare providers submitted bills to either or both of her insurance plans: BCBS-IL and Empire.

29. As is usual in personal healthcare at this time, both insurers immediately rejected the actual charges billed for the services rendered by Ms. LeMoine's healthcare providers.

The insurers instead made unilateral decisions as to what amount of benefits would be "allowed".

30. Both BCBS-IL and Empire processed and paid some of the bills submitted, and some bills they rejected and refused to pay.

31. The principal reasons for rejections of bills by both insurers were that Ms. LeMoine had not sought pre-approval of the provider's involvement from the insurer and that the hospital and providers were "out of network", i.e., the providers did not have pre-existing contractual relationships with the insurers to cap their reimbursement at predetermined "in network" rates.

32. Where the Defendants did process bills and make payments based on their one-sided analyses, the Defendants sent checks to Ms. LeMoine with the presumption that she in turn would cash and rewrite checks to providers from her own account or endorse the insurer check directly to the provider.

33. These partial payments as amounts were unilaterally set by the insurers reflected the "out of network" status of Ms. LeMoine's providers and reduced reimbursement.

34. The difference in benefits withheld because of the "out of network" status as opposed to the "in network" status is unknown.

35. The provider-specific agreements concerning reimbursement between insurer and provider are often regarded as confidential.

36. Because Ms. LeMoine's individual doctors and other providers were not "in network", they had no contractual obligation to accept the unilaterally determined payments made by the Defendants in partial satisfaction of their charges.

37. Where a provider is "out of network", she or he may continue to seek full payment for the balance of their charges directly from a patient, in this case, Ms. LeMoine.

38. Ms. LeMoine admits that she did not seek pre-approval of healthcare services from any hospital or provider due to her injuries and dire medical circumstances.

39. Ms. LeMoine admits that she did not shop through the Hackensack University Medical Center attending physician directory to identify and demand care only from those physicians who were "in network" with her insurance plans.

40. Ms. LeMoine later learned that none of the trauma physicians at Hackensack University Hospital were "in network" participants with either insurance plan.

41. For most, if not all of the bills submitted by her providers, Ms. LeMoine received Explanations of Benefits ["EOBs"] from the Defendants summarizing their analyses and payment decisions in cryptic terms of art.

42. Under the terms of the Defendants' health insurance plans, an adverse payment decision required Ms. LeMoine to appeal from reductions or refusals within 180 days of the date of the adverse notice.

43. Ms. LeMoine attempted in good faith to use the administrative appeals process dictated by Defendants' plan documents, but she was unsuccessful.

44. In July 2015, Ms. LeMoine had numerous conversations with billing representatives of her healthcare providers and the Defendants. She also received form appeal letters from providers that she signed and returned with the understanding that the providers would submit these directly to Defendants on her behalf, and, as a

consequence, Ms. LeMoine is not personally aware whether the appeals were actually sent.

45. Some of the appeal forms sent to Ms. LeMoine by doctors' billing representatives appear to reflect an erroneous conclusion that she was insured by Horizon Blue Cross Blue Shield, a completely different insurance plan, whose relationship with BCBS-IL and Empire is unknown.  Whether the insurance companies forwarded correspondence among themselves is unknown.

46. In addition, certain of these appeal documents inadvertently confused Ms. LeMoine's insurance plan identification numbers for both the BCBS-IL plan and the Empire plan.

47. Ms. LeMoine appealed as early as August 2015 by telephone and letter from denials of some claims as lacking pre-approval or billing by out of network providers with the assertion that her medical condition simply prevented her from detailed vetting of every provider involved with her trauma care and rehabilitation.  Rejections based on a lack of pre-approval or out of network status should therefore have been waived.

48. Ms. LeMoine believes that some or all of these conversations with Defendants' representatives were recorded.

49. These arguments were apparently rejected out of hand since Ms. LeMoine never received any reply or notice that certain bills had been adjusted to reflect that "in network" rates had been paid to her healthcare providers.

50. On June 29, 2015, Ms. LeMoine received a letter from her former employer Sitex claiming that she was "terminated on February 2, 2014" and requesting refunds obtained from Blue Cross Blue Shield plan # 558963 "in error".

51. On September 29, 2015, Ms. LeMoine received notice from BCBS-IL that her coverage with that plan ended on 6/13/2015, approximately two months after her injuries.

52. As far as Ms. LeMoine's circumstances were concerned, the administrative appeal process was and remains an exercise in futility.

53. Defendants completely controlled their administrative appeal processes, directives that rely on often arcane terms of insurance industry art that are intended to dissuade beneficiaries from the process.

54. Because Ms. LeMoine had no meaningful choice in selection of her employer-sponsored health care benefits and no choice in the selection of her emergency healthcare providers, she could not seek pre-treatment approval from Defendants or reasonably select a team of physicians and others who were "in network".

55. As a result, Defendants chose to reject all charges submitted by Ms. LeMoine's healthcare providers but for the arbitrary reimbursement of partial payments unilaterally set by Defendants without any reference to methodology or rationale.

56. Because all of Ms. LeMoine's treatment was emergent in nature and performed by practitioners she did not select, any claim rejection on these terms as to any bill submitted applied to all equally.

57. Since all have been rejected for the same reasons, multiple or provider-specific appeals from each bill submitted would have all shared the same inflexible disposition.

58. As of the date of this Complaint, one multi-provider appeal of claim denials remains outstanding.

59. On December 19, 2016 and December 28, 2016, Ms. LeMoine appealed from earlier rejections of submitted bills as "out of network."

60. Defendant Empire acknowledged receipt of these appeals in early January 2017 but has not yet served a formal written response.

61. The paper exchange between the insurers and Ms. LeMoine continues to this date.

62. Most recently, on May 20, 1917, Empire has demanded reimbursement of $32,120.16, monies it claims it paid incorrectly when BCBS-IL should have been the primary payor.

63. Ms. LeMoine is unaware whether Defendants have communicated with each other about their overlapping insurance coverage.

64. The exact amount of benefits that Defendants should fairly and reasonably have paid to Ms. LeMoine's healthcare providers as "in network" rates rather than "out of network" rates is unknown.

65. It is by the failure of both BCBS-IL and Empire to reimburse Ms. LeMoine's providers at "in network" rates with pre-approval notwithstanding that they breached the valid employee-sponsored insurance plans extended to Ms. LeMoine by her former employers.

66. To the extent that Defendants have chosen not to make any payments to Ms. LeMoine's numerous healthcare providers based on a lack of pre-approval, "out of network" status or other arbitrary and capricious rationales, these actions breached their health insurance contracts with her and gave rise to this civil action pursuant to 29 U.S.C.A. §1132(a)(1)(B).

67. Plaintiff Charlene LeMoine is entitled to recover all benefits due to her under the terms of her health insurance plans with Defendants, entitled to enforce her rights under

the terms of the plan, and entitled to clarify her rights to future benefits under the terms of the plan.

### Prayer for Relief

WHEREFORE, Plaintiff Charlene LeMoine demands that judgment be entered against Blue Cross Blue Shield of Illinois and Empire Blue Cross for:

A. Compensatory damages to Plaintiff, against all defendants, jointly and severally, in an amount to be determined at trial, pursuant to applicable law;

B. Pecuniary damages to Plaintiffs, against all defendants, jointly and severally, in an amount to be determined at trial, pursuant to applicable law;

C. Reasonable pre-and post-judgment interest on all monetary awards, pursuant to applicable law; and

D. Such other and further relief which this Court may determine to be just and equitable under the circumstances.

By: */s/ Terrence Smith*
Terrence Smith 8297
Davis, Saperstein & Salomon P.C.
375 Cedar Lane
Teaneck, NJ 07666
Tel: (201) 907-5000
Fax: (201) 692-0444
Email: tsmith@dsslaw.com

Dated: July 10, 2017

### Local Civil Rule 11.2 Certification

I, Terrence Smith, attorney for Plaintiff Charlene LeMoine, in accordance with Loc. Civ. R. 11.2, hereby certifies, pursuant to 28 U.S.C. §1746, that to the best of my knowledge, the matter in controversy in the above-captioned civil action, is not the subject of any other action pending in any Court, nor is it the subject of any pending arbitration or

administrative proceeding. I certify under penalty of perjury that the foregoing is true and correct.

                                                  By: */s/ Terrence Smith*
                                                        Terrence Smith
                                                DAVIS, SAPERSTEIN & SALOMON P.C.
                                                375 Cedar Lane
                                                Teaneck, NJ 07666
                                                Tel: (201) 907-5000
                                                Fax: (201) 692-0444
                                                Email:  tsmith@dsslaw.com

Dated:  July 10, 2017